UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LAURA VILLAFUERTE-DIAZ,<br><br>　　　　　　　　　　Defendant. | Case No.: 19-cr-1063-GPC<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 32]** |

Defendant Laura Villafuerte-Diaz has filed a motion seeking compassionate release or reduction of her sentence under 18 U.S.C. § 3582(c). ECF No. 32. The Government opposes. ECF No. 37 ("Opp."). Defendant filed a reply. ECF No. 38. For the reasons that follow, Defendant's motion is **GRANTED**.

### I.   BACKGROUND

On July 1, 2019, Defendant was convicted by guilty plea of two counts of Importation of Fentanyl and Methamphetamine in violation of 21 U.S.C. §§ 952 and 960. ECF No. 22. Defendant is presently serving a 24-month sentence at Federal Correctional Institution ("FCI") Dublin and her scheduled release date is on November 13, 2020. ECF No. 32 at 1; ECF No. 37 at 1. In other words, she has served over 70 percent of her total sentence.

Defendant was born on September 17, 1964 and is 55-years-old.  ECF No. 22 ("Presentence Investigation Report" or "PSR") at 2.  Due to a botched surgical operation on her ovaries and uterus, one of Defendant's kidneys was removed and she only has one remaining kidney.  ECF No. 32 at 7.  Defendant additionally suffers from a tumor on her ovary, and is currently experiencing a high degree of back pain, increased urgency with urination, chills, and headache due to what may be an ongoing urinary infection.  *Id.*; PSR ¶ 47.

## II.   DISCUSSION

Defendant now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Defendant has satisfied the administrative exhaustion requirement, and second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court

3

for release.  Under this requirement, courts may consider a motion for compassionate release so long as the defendant has either fully exhausted all administrative remedies, or, 30 days have lapsed from the receipt of such a request by the warden, whichever is earlier.

On or around June 5, 2019, Defendant submitted a request for compassionate release to the Warden of FCI Dublin.  ECF No. 32, Ex. A.[1]  On June 19, 2020, Defendant, through her attorney, sent the Warden of FCI Dublin a copy of the Defendant's request for release.  ECF No. 32, Ex. B.  On June 19, 2020, the Warden of FCI Dublin denied Defendant's request for Compassionate Release/Reduction in Sentence.  ECF No. 32, Ex. C.

More than 30 days have lapsed since the Warden's denial.  The Government does not contest the issue of exhaustion.  The Court accordingly finds that the exhaustion requirement has been met and considers the merits of Defendant's motion.

### B.     Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of

---

[1] District courts may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Thus, a court may judicially notice matters of public record including "government documents available from reliable sources on the internet."  *California River Watch v. City of Vacaville*, No. 2:17-cv-00524-KJM-KJN, 2017 WL 3840265, at *2 n.1 (E.D. Cal. Sept. 1, 2017).  Accordingly, the Court judicially notices the exhibits submitted by Defendant and matters of public record.  *See, e.g.*, *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (taking judicial notice of the Defense Security Cooperation Agency's (DSCA) published guidelines); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of public records on the City of Santa Monica's official website).  In doing so, the Court judicially notices "the contents of the documents, not the truth of those contents."  *Gish v. Newsom*, No. EDCV 20-755-JGB(KKx), 2020 WL 1979970, at *2 (C.D. Cal. April 23, 2020).

the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

  Defendant argues that her health conditions, combined with the threat of contracting COVID-19 while incarcerated, constitute extraordinary and compelling reasons meriting her release. Defendant also asserts that she would not present a danger to the community if released. The Government does not contest that Defendant would not pose a danger to the community, given her "lack of criminal history, her family in Mexico, her deportation following her release and inability to return to the United States." ECF No. 37 at 5. Rather, the Government argues that Defendant's health conditions do not constitute extraordinary and compelling reasons meriting her release.

  Defendant argues that her single kidney, ongoing urinary infection, and advanced age put her at risk of severe illness and death if she were to contract COVID-19. Further, Defendant argues that the conditions in prison pose serious risk to her health. The

Government argues that her single kidney and age do not pose enough of a risk to merit her release, and contests her claim that she is presently suffering from a urinary infection.

The Court finds that the heightened risks that Defendant faces based on her medical conditions and age if she were to contract COVID-19 weigh heavily in favor of her release.  The Centers for Disease Control and Prevention ("CDC") has warned that individuals who suffer from chronic kidney disease of any stage, or are otherwise immunocompromised, are at higher risk of becoming severely ill and dying from COVID-19.  *See People With Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#chronic-kidney-disease (last visited July 28, 2020).  The CDC has also warned that the risk for severe illness from COVID-19 increases with age and that "people in their 50s are higher risk for severe illness than people in their 40s."  *Id.*  As of June 6, 2020, the CDC reported that for individuals aged between 50-years-old and 64-years-old, a hospitalization rate of 136.1 per 100,000 population.  *Id.*  Additionally, although the scientific research is ongoing, COVID-19 has been preliminarily found to have a particularly deleterious effect on kidneys and trigger acute kidney injury.  ECF No. 32-1 at 27-36.  Studies have shown that 14 to 30 percent of intensive-care patients in New York and Wuhan, China lost kidney function and required dialysis or continuous renal replacement therapy.  *See* Lenny Bernstein et al., *Coronavirus destroys lungs. But doctors are finding its damage in kidneys, hearts and elsewhere*, WASH. POST (Apr. 15, 2020), available at https://www.washingtonpost.com/health/coronavirus-destroys-lungs-but-doctors-are-finding-its-damage-in-kidneys-hearts-and-elsewhere/2020/04/14/7ff71ee0-7db1-11ea-a3ee-13e1ae0a3571_story.html (last visited July 28, 2020).  Defendant states that if her solitary kidney is damaged, since she lacks the buffer of a second kidney, the risk posed by acute kidney injury is particularly severe for her health.

1  ECF No. 32 at 9-10.  Defendant also notes that she is currently suffering from kidney
2  pain due to what may be an ongoing urinary infection and has been experiencing back
3  pain, increased urgency with urination, chills, and headache.  ECF No. 32 at 7-8.
4  Although Defendant requested to be seen by BOP medical staff and was thereafter
5  provided with antibiotics to treat the infection as well as Tylenol for pain relief, she states
6  that she is suffering from ongoing symptoms.  *Id.*

7        Any incarcerated person with one of the underlying conditions identified by the
8  CDC is unlikely to be able "to provide self-care within the environment of a correctional
9  facility" to avoid contracting COVID-19.  U.S. Sentencing Guidelines § 1B1.13 cmt.
10  1(A)(ii).  *See also* Katelyn Polantz, *Inmates Sue for Soap and Paper Towels as*
11  *Coronavirus Spreads in Jails*, CNN INT'L (Mar. 31, 2020), available at
12  https://www.cnn.com/2020/03/31/politics/inmates-sue-coronavirus-jails/index.html (last
13  visited July 28, 2020).  Prison conditions mean incarcerated individuals, as well as
14  society as a whole, are safer the more defendants are released.  *See* The Times Editorial
15  Board, *Coronavirus Makes Jails and Prisons Potential Death Traps. That Puts Us All in*
16  *Danger*, L.A. TIMES (Mar. 18, 2020), available at
17  https://www.latimes.com/opinion/story/2020-03-18/coronavirus-prisons-releases (last
18  visited July 27, 2020).  This is especially true for defendants who are at high risk of
19  contracting severe cases, and even dying, of COVID-19.  *See United States v. Ramos*,
20  ___ F.Supp.3d ___, No. 18-CR-30009-FDS, 2020 WL 1478307, at *1 (D. Mass. Mar. 26,
21  2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in this
22  institutional setting.").

23        Further, Defendant notes that although FCI Dublin is currently reporting only one
24  active inmate case, the BOP has only tested 93 inmates out of the 986 that are currently
25  housed at FCI Dublin, and in several BOP institutions, the number of positive cases
26  jumped—ranging from 400 percent of the original number of cases to nearly 9,000
27  percent—within a span of two weeks.  ECF No. 32 at 14.  For example, FCI Lompoc
28

7

reported 6 cases on April 22, and on May 7, reported 541 cases. *Id*. Further, Defendant notes that Alameda County, where FCI Dublin is located, has recorded 2,630 new cases within the last two weeks. *Id. See also* L.A. Times Staff, *Tracking coronavirus in Alameda County*, L.A. TIMES, available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/alameda-county/ (last visited July 27, 2020). Despite BOP's commendable efforts, COVID-19 poses a serious risk and has spread rapidly through the federal prison system. In other words, Defendant has effectively demonstrated a nexus between her medical conditions and the ongoing pandemic which supports a reduction under section 3582.

Sections 3553 and 3582 also require consideration of public safety. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii). Defendant has no history of violent conduct and the instant conviction additionally did not involve any violent conduct; her conduct was aberrant behavior from an otherwise law-abiding life. *Id*. at 17. Further, since she will be deported upon her release and barred from reentry, she will not pose danger to the community. *See United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, 2020 WL 2535049, at *3 (S.D. Cal. May 15, 2020) (granting release for defendant convicted of importation of methamphetamine with no history of non-violent conduct and would be deported upon her release). Defendant plans to return to Tijuana in a family home that she owns with her husband. ECF No. 32 at 16.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III. CONCLUSION

Ultimately, the Court finds that minimal prior criminal record, the minimal amount of time left on her sentence, and her health conditions counsel in favor of her release. For the foregoing reasons, Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED**. Her period of incarceration is reduced to time served.

The Government shall serve a copy of this order on the Warden at FCI Dublin immediately. The Warden of FCI Dublin shall immediately release Defendant Laura Villafuerte-Diaz from custody. In the event that the Warden or any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated: July 28, 2020

Hon. Gonzalo P. Curiel
United States District Judge